[No. 14009-8-II.   Division Two.   July 16, 1992.]

*In the Matter of the Adoption of* M.

JOHN DOE, ET AL, *Respondents*, v. NAVAJO NATION, *Appellant.*

476

*Craig J. Dorsay* and *Meyer & Wyse,* for appellant.

*John R. Fox,* for respondents.

MORGAN, J. — The Navajo Nation appeals from a determination that the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-63, does not apply to this case. Holding that the act applies, we reverse and remand.

The subject of the proceedings is M, a child born out of wedlock in December 1989. M was not born on the Navajo reservation, and she has never been a resident or domiciliary of the reservation.

M's biological parents are A and K. K is non-Indian. A is a full-blooded Navajo and an enrolled member of the Navajo Nation. Born in 1964, he lived on the reservation until about 1972, when his mother placed him in foster care. A church social service agency then arranged for his permanent placement in a non-Indian home in Washington, and he lived there for the remainder of his youth.

A, K, or both, selected a married couple, Mr. and Ms. J, to be M's adoptive parents. Neither of the J's is Indian within the

meaning of the act, although Ms. J has one-quarter Indian blood.

Shortly after M's birth, the J's filed a petition for adoption with the Clark County Superior Court. They were granted temporary custody, and M has been in their care since release from the hospital in December 1989.

On January 19, 1990, A and K each executed a written consent to adoption and waiver of right to further notice before the trial court. The trial court found that each of them understood the consequences of their actions, but no order terminating parental rights was entered at that time.

On March 7, 1990, the Navajo Nation moved to intervene.[1] It asked that M be placed with her paternal aunt, who is Navajo and lives on the reservation.[2] Both A and K vehemently opposed placing M on the reservation. They even threatened to withdraw their consent to adoption if necessary to prevent such a placement. *See* 25 U.S.C. § 1913(c); 25 U.S.C. § 1916(a); *A.B.M. v. M.H.*, 651 P.2d 1170 (Alaska 1982), *cert. denied*, 461 U.S. 914 (1983).

On May 24, 1990, the trial court ruled that ICWA did not apply and entered written findings stating in part:

> 3.7. The ICWA was not intended to apply to a situation as we have here, to a child who was born off the reservation to a Non-Indian mother and an Indian father, who was long removed from the reservation. This is not the break up of an Indian family as contemplated when the ICWA was adopted by Congress.
>
> 3.8. We cannot ignore the rights of the natural parents, and we must be sensitive to the best interests of the child. Both parents were very vocal in not wanting their child to be raised on the reservation. Both parents advised the court they wished the Petitioners to adopt the child.

---

[1]The record on appeal does not contain an order granting or denying the motion to intervene. On appeal, we treat the Navajo Nation as having been allowed to intervene.

[2]The Navajo Nation has its own Division of Social Services, and apparently a social worker employed by that Division solicited the aunt as a possible placement resource. Clerk's Papers, at 25 (social worker "made contact" with the aunt). The record does not show that the aunt has ever met the child or the mother, or that the aunt has seen the father since he was a child.

On the same date, the trial court also signed (1) an order terminating A's and K's parental rights and (2) a final decree of adoption in favor of the J's. The Navajo Nation appealed the decree of adoption; no one appealed the order terminating parental rights.

█ According to the express language of ICWA, its applicability turns on two criteria. As the Arizona Court of Appeals stated in *In re Appeal in Maricopa Cy. Juvenile Action A-25525*, 136 Ariz. 528, 531, 667 P.2d 228, 231 (Ct. App. 1983):

> There are two prerequisites to invoking the requirements of the ICWA. First, it must be determined that the proceeding is a "child custody proceeding" as defined by the Act. *Id.* § 1093(1). Once it has been determined that the proceeding is a child custody proceeding, it must then be determined whether the child is an Indian child. *Id.* § 1903(4), (9).

(Footnote omitted.) *See also In re Appeal in Coconino Cy. Juvenile Action J-10175*, 153 Ariz. 346, 349, 736 P.2d 829, 832 (Ct. App. 1987); *A.B.M. v. M.H.*, 651 P.2d at 1172; *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 42, 104 L. Ed. 2d 29, 42, 109 S. Ct. 1597, 1600 (1989) (Supreme Court applied jurisdictional provisions of ICWA after determining that proceeding was child custody proceeding and that child was Indian child).

According to the express language of ICWA, a child custody proceeding is any action resulting in termination of the parent-child relationship, 25 U.S.C. § 1903(1)(ii), and any action resulting in a final decree of adoption. 25 U.S.C. § 1903(1)(iv). Here, the proceedings meet this definition, for their object is a final decree of adoption.

According to the express language of ICWA, an Indian child is any unmarried person under 18 who is either (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. 25 U.S.C. § 1903(4). Here, it is undisputed that M meets this definition.

According to the express language of ICWA, there are two situations in which it does not apply, notwithstanding the existence of the criteria just discussed. One is when place-

ment is based on an act of juvenile delinquency, and the other is when placement is based on an award of custody to a parent in a divorce proceeding. 25 U.S.C. § 1903(1); *In re S.B.R.*, 43 Wn. App. 622, 625, 719 P.2d 154, *review denied*, 108 Wn.2d 1009 (1986). Neither of these situations is present here.

But for *In re Adoption of Crews*, 118 Wn.2d 561, 825 P.2d 305 (1992), we would conclude at this point that the act applies. However, *Crews* requires further analysis.

In *Crews*, a mother consented to termination of her parental rights and adoption of her child. She also signed a consent/adoption form stating that the ICWA was not applicable. The Superior Court entered an order terminating her parental rights on May 24, 1989.

On September 19, 1989, the mother secured, for the first time, a Certificate of Degree of Indian Blood (CDIB) from the Choctaw Nation. Using the CDIB, she then sought to withdraw her consent and invalidate the order terminating her parental rights on grounds that ICWA had been violated. The trial court granted summary judgment against her. It reasoned that ICWA could not be applicable before a child met the definition of "Indian child"; that Crews' child did not meet the definition of "Indian child" until the CDIB was issued in September; and that the termination order entered several months earlier was therefore valid. The Court of Appeals affirmed for the same reasons.

The Supreme Court also affirmed, but for different reasons. Apparently assuming that ICWA's definitions of "child custody proceeding" and "Indian child" had been met, the court reasoned that "whether or when a child meets the definition of 'Indian child' under ICWA is not controlling", 118 Wn.2d at 571, and that ICWA "was not intended to apply in the situation presented by the specific facts of this case." 118 Wn.2d at 567. It explained:

In this case, however, Crews and the Choctaw Nation ask this court to apply ICWA when B. has never been a part of an existing Indian family unit or any other Indian community. Neither Crews nor her family has ever lived on the Choctaw

reservation in Oklahoma and there are no plans to relocate the family from Seattle to Oklahoma. Bertiaux, B.'s father, has no ties to any Indian tribe or community and opposes B.'s removal from his adoptive parents. Moreover, there is no allegation by Crews or the Choctaw Nation that, if custody were returned to Crews, B. would grow up in an Indian environment. To the contrary, Crews has shown no substantive interest in her Indian heritage in the past and has given no indication this will change in the future.

While B. may be an "Indian child" based on the Choctaw Constitution, we do not find an existing Indian family unit or environment from which B. was removed or to which he would be returned. To apply ICWA in this specific situation would not further the policies and purposes of ICWA. Consequently, we hold ICWA does not apply to invalidate Crews' voluntary termination of her parental rights and consent to adoption.[3]

118 Wn.2d at 569.

*Crews* clearly states that there are some cases in which ICWA will be deemed to be inapplicable even though its express provisions have been met — in other words, even though the proceeding is a "child custody proceeding" and the child is an "Indian child". *Crews* does not identify clearly, however, which cases those will be. Arguably, it says that the act will be inapplicable when an Indian child is not being removed from an "existing Indian family unit" (118 Wn.2d at 569), an "Indian community" (118 Wn.2d at 569), an "Indian environment" (118 Wn.2d at 569-70), or an "Indian cultural setting" (118 Wn.2d at 571). Arguably and alternatively, it says that the act will be inapplicable when an Indian child would not "grow up in an Indian environment" even if preferential placement were effected according to the act. 118 Wn.2d at 569-71. Arguably and again alternatively, it says

---

[3]The court also ruled against Crews on a second, independent ground. It said that if ICWA applied, 25 U.S.C. § 1913(c) was controlling. It then said that § 1913(c) impliedly prohibited the withdrawal of consent to termination after entry of a final order of termination. 118 Wn.2d at 571-72.

Three of the eight participating Justices declined to adopt either of the majority's grounds. Concurring by separate opinion, they said that the ICWA did not apply until a child met its definition of Indian child; that Crews' child did not meet such definition when the termination order was entered; and that therefore the act did not apply to Crews' case.

that the act will be inapplicable when an Indian child is not being removed from an Indian environment *and* would not grow up in an Indian environment even if preferential placement were effected according to the act.

Lacking clear guidance, we hold that *Crews* does not affect this case for two reasons. First, the *Crews* court said:

> ICWA was enacted to counteract the large-scale separations of Indian children from their families, tribes, and culture through adoption or foster care placement, generally in non-Indian homes. . . . These separations and placements were found to be largely unwarranted resulting from a failure by child welfare services to understand the cultural differences in Indian child-rearing practices and other social and economic factors of Indian life. . . .

118 Wn.2d at 567. Although that was not the kind of case presented by *Crews*, it is the kind of case presented here, for when A was a child, a private social services agency arranged to have him removed from the reservation and placed in a non-Indian home in Washington. On this ground, then, *Crews* is distinguishable.

Second, the *Crews* court said:

> We are not unmindful that prior abusive child welfare practices may have cut off large numbers of persons from their Indian heritage. *See Holyfield*, 490 U.S. at 37, 50 n.24. Furthermore, there may be instances where the application of ICWA would result in the placement of an Indian child back into an Indian environment. This is not the case before us. It is within the narrow circumstances presented by the specific facts of this case that we find ICWA not applicable.

118 Wn.2d at 571. Although application of ICWA in *Crews* could not have resulted in the child being placed in an Indian environment — the child would have been returned to Crews and her home was not an Indian environment — application of ICWA to M might result in M being placed on the reservation with an Indian aunt. On this ground also, then, *Crews* is distinguishable.

Based on our discussion so far, we conclude that this case meets ICWA's express criteria and is not affected by *Crews*. Thus, ICWA applies.

Because ICWA applies, this case is governed by 25 U.S.C. § 1915(a).[4] It provides:

> In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families.

■ By its terms, 25 U.S.C. § 1915(a) requires the court either to adopt a preferential placement or to find good cause why that should not be done. *See In re Adoption of T.R.M.*, 525 N.E.2d 298, 313 (Ind. 1988), *cert. denied*, 490 U.S. 1069 (1989). Good cause is a matter of discretion,[5] *In re Appeal in Maricopa Cy. Juvenile Action A-25525*, 136 Ariz. at 534, and discretion must be exercised in light of many factors. *See In re J.R.H.*, 358 N.W.2d 311, 321-22 (Iowa 1984). These include but are not necessarily limited to the best interests of the child, 25 U.S.C. § 1902; *In re Bird Head*, 213 Neb. 741, 750, 331 N.W.2d 785, 791 (1983); *In re N.L.*, 754 P.2d 863, 870 (Okla. 1988), the wishes of the biological parents, 25 U.S.C. § 1915(c), the suitability of persons preferred for placement, *In re Bird Head*, 213 Neb. at 749-50, the child's ties to the tribe, *In re Appeal in Maricopa Cy. Juvenile Action A-25525*, 136 Ariz. at 534, and the child's ability to make any cultural adjustments necessitated by a particular placement. *In re J.R.H.*, 358 N.W.2d at 321-22.

---

[4]Both parties agree. At pages 11-17 of their brief, the prospective adoptive parents argue the applicability of 25 U.S.C. § 1915. Their arguments tacitly acknowledge that § 1915 applies if the act applies.

In its opening brief, the Navajo Nation seemed to assert several arguments in an attempt to block the applicability of 25 U.S.C. § 1915(a). Brief of Appellant, at 26-30. In its reply brief, however, the Navajo Nation expressly states:

> Here the Navajo Nation intends that permanent placement of M go forward, only that the child should be placed properly according to the requirements of 25 U.S.C. § 1915(a).

Reply Brief of Appellant, at 5. Thus, the Navajo Nation's present position is that M is available for adoptive placement pursuant to 25 U.S.C. § 1915(a), and we deem previous arguments to the contrary to have been abandoned.

[5]Indeed, Congress used the term "good cause" in order to provide the state courts with some flexibility in determining the placement of an Indian child. *In re Bird Head*, 213 Neb. 741, 750, 331 N.W.2d 785, 791 (1983).

*See also* 44 Fed. Reg. 67,584 (1979) (nonbinding guidelines issued by Department of Interior); *In re Junious M.*, 144 Cal. App. 3d 786, 792 n.7, 193 Cal. Rptr. 40 (1983) (guidelines not binding).

If we interpret the briefs correctly, the prospective adoptive parents ask us to find good cause as a matter of law, and the Navajos ask us to find an absence of good cause as a matter of law. We decline to make either finding. Because the trial court ruled that the act did not apply, it made no ruling on how 25 U.S.C. § 1915(a) affects this case. The trial court is the proper court to make that ruling in the first instance, and on remand it shall hold a hearing for that purpose.

Although we feel constrained to hold that the act applies, we emphasize, prior to remanding the case, that the provisions of the act vest the trial court with ample discretion to allow the child to remain permanently in the home selected by both natural parents and in which she has lived since birth. Exercise of that discretion, however, must be based upon a finding of good cause for nonpreferential placement pursuant to 25 U.S.C. § 1915(a). In proceedings leading to the exercise of that discretion, all interested parties, including the Navajo Nation, have the right to appear and be heard.

The final decree of adoption is reversed, and the temporary order placing the child with the J's is reinstated. The matter is remanded to the trial court for further proceedings in accordance herewith.

PETRICH, C.J., and ALEXANDER, J., concur.