**In the Matter of the ADOPTION OF F.H., a minor child.**

No. S–5044.

Supreme Court of Alaska.

May 14, 1993.

Don Clocksin, Wagstaff, Pope & Clocksin, Anchorage, for appellant Native Village of Noatak.

Richard P. Sullivan, Jr., Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for State of Alaska, Div. of Family and Youth Services.

Mary Ellen Ashton, Ashton & Dewey, Anchorage, for appellees Nancy Hartley and Carol Hartley.

R. Scott Taylor, Rice, Volland and Gleason, P.C., Anchorage, for appellee E.P.D.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

The Native Village of Noatak (Noatak) and the State of Alaska, Division of Family and Youth Services (DFYS), opposed the adoption of F.H., an Indian child, by the Hartleys, a non-Indian couple. Superior Court Judge Elaine M. Andrews determined that F.H.'s case presented good cause to deviate from the Indian Child Welfare Act (ICWA) adoptive placement preferences. Noatak and DFYS appeal this determination.

## I. FACTUAL AND PROCEDURAL BACKGROUND

F.H. was born on February 24, 1990. Her mother, E.P.D., had a blood alcohol level of about .275 at the time of birth. F.H.'s biological father is unknown. F.H. is an Indian child as defined by ICWA. 25 U.S.C. § 1903. She and her mother are members of the Native Village of Noatak.

DFYS took custody of F.H. shortly after her birth, based on her mother's homelessness and high blood alcohol level at the time of birth. DFYS filed a Child in Need of Aid (CINA) petition (3AN–90–159) and notified Noatak. DFYS filed a petition to terminate parental rights in August 1990.[1]

F.H. has experienced a number of medical problems, symptomatic of Fetal Alcohol Syndrome (FAS) or Fetal Alcohol Effects (FAE). The Alaska Area Native Health Service has determined that F.H. does not have FAS, but is at high risk for FAE, which is not as severe. Her prenatal exposure to alcohol has placed her at risk for developmental delay and learning and behavioral problems.

F.H. lived in four different foster homes before she was adopted by the Hartleys in March 1992. The Hartleys were her third foster placement. F.H. lived with them from June 1990 until June 1991, when Carol Hartley was transferred to Washington State. F.H. now lives with the Hartleys in Kennewick, Washington.

While F.H. was in foster homes, E.P.D. expressed an interest in relinquishing her custody to at least five different people, including her cousin, Mary Penn, and the Hartleys. As E.P.D.'s cousin, Mary Penn is a first place adoptive placement preference under ICWA. 25 U.S.C. § 1915(a). Based upon a favorable home study, DFYS concluded that F.H. should be placed with Mary Penn, though F.H. never lived with her. Trial on the petition to terminate parental rights was set for September 18, 1991.

On September 16, E.P.D. executed three documents before Probate Master Lucinda McBurney relinquishing her parental rights to the Hartleys. Her relinquishment was conditioned upon the Hartleys' adoption of F.H., F.H.'s retention of inheritance rights from E.P.D., and E.P.D.'s and her family's retention of contact and visitation rights with F.H. The next day, the Hartleys filed a Petition for Adoption. Since signing the papers, E.P.D. has consistently supported an adoption by the Hartleys.

E.P.D. has not been to Noatak for several years and plans never to return. She abuses alcohol. Her father died of alcoholism. Her mother was murdered by her brother. None of her siblings were raised

---

1. The CINA proceeding was briefly consolidated with the adoption proceeding. That consolidation was vacated and the adoption trial was held first. The CINA petition was dismissed when the Hartleys' petition for adoption was granted.

in Noatak. F.H. has never been to Noatak. E.P.D. believes she could visit F.H. more easily in Kennewick, Washington, than in Noatak.

An early interventionist, who worked with F.H. in the Hartleys' home twice a month for almost one year, believes F.H. made a lot of progress during that period and that F.H.'s bond with Nancy Hartley is the best F.H. will ever have. Both guardians ad litem assigned to F.H. testified that they believe F.H.'s best interest is to be placed with the Hartleys. The DFYS social worker assigned to F.H.'s case until June 1991 believed that F.H. should have stayed with the Hartleys.

After several hearings at which Noatak,[2] E.P.D., the Hartleys, DFYS, and F.H. were represented, Probate Master John E. Duggan recommended that the superior court find good cause to deviate from ICWA preferences. The primary basis for his recommendation was the "strong and consistent preference of the biological mother for this open adoption by the petitioners and against placement of her daughter in the village of Noatak." Secondary considerations included 1) the bond between Nancy Hartley and F.H., 2) the uncertainty of F.H.'s future if the adoption were not allowed, and 3) the "open adoption" petition allowing E.P.D. access to F.H. and possibly giving F.H. exposure to her Native American heritage.

Judge Andrews accepted Master Duggan's recommendation. Judge Andrews stressed the importance of the mother's preference, which was based in part on the adoption of F.H. being "open." E.P.D. retained contact and visitation rights, while F.H. retained her inheritance rights from E.P.D. In contrast, "[t]here is no written evidence suggesting that the proposed Penn adoption would be 'open.'"

In support of its Motion for Reconsideration, Noatak submitted the affidavit of Mary Penn and an excerpt from a study of Northwest Alaskan Family traditions to show that E.P.D. and others in F.H.'s blood family would have access to F.H. if she lived with Mary Penn. Judge Andrews denied the motion.

Superior Court Judge Brian C. Shortell conducted a hearing on the remaining issues. He granted the Decree of Adoption on March 5, 1992. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

 The question on appeal is whether the superior court erred in concluding that good cause existed to deviate from the adoptive placement preferences mandated under ICWA (25 U.S.C. §§ 1901–1963). Under state law, the Hartleys have the burden of proof by a preponderance of the evidence that there is good cause for allowing a non-preferred placement. Alaska Adoption Rule 11(f). A good cause determination is within the superior court's discretion. See In re Adoption of M., 66 Wash.App. 475, 832 P.2d 518, 522–23 (1992); In re Appeal in Coconino County Juvenile Action No. J–10175, 153 Ariz. 346, 349–50, 736 P.2d 829, 832–33 (App. 1987). We will reverse an adoptive placement preference determination only if convinced that the record as a whole reveals an abuse of discretion or if controlling factual findings are clearly erroneous. Farrell v. Farrell, 819 P.2d 896, 898 (Alaska 1991). Abuse of discretion is established if the superior court considered improper factors or improperly weighted certain factors in making its determination. See id. Whether there is good cause to deviate in a particular case depends on many factors including, but not necessarily limited to,

---

**2.** The Hartleys assert that Noatak's opposition to their adoption is barred by the doctrine of laches. Noatak was sent notices of F.H.'s CINA case in March and August 1990. In October 1991 Noatak received notice of the Hartleys' adoption petition and only then moved to intervene in both the adoption and the CINA cases. Alaska Adoption Rule 12(a) states that "[i]n any adoption or relinquishment proceeding involving an

Indian child, the Indian child's tribe and an Indian custodian, if any, may intervene as a matter of right *at any stage* in the proceeding." (Emphasis added). In light of this rule, it is doubtful laches may be raised as a defense to intervention "at any stage in the proceeding." In view of our decision on the merits, we need not address laches.

the best interests of the child, the wishes of the biological parents, the suitability of persons preferred for placement and the child's ties to the tribe. *In re Adoption of M.*, 832 P.2d at 522.

### B. Good Cause Determination

ICWA was enacted to discourage the separation of Indian children from their families and tribes through adoption or foster care placement to non-Indian homes. 25 U.S.C. § 1901; *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36, 109 S.Ct. 1597, 1601, 104 L.Ed.2d 29 (1989). Congress found that no resource "is more vital to the continued existence and integrity of Indian tribes than their children." 25 U.S.C. § 1901(3); *Holyfield*, 490 U.S. at 38, 109 S.Ct. at 1603. In order "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families," Congress established minimum federal standards for the placement of Indian children in foster or adoptive homes. 25 U.S.C. § 1902.

ICWA provides preferences in placing Indian children for adoption.

> In any adoptive placement of an Indian child *under* State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families.

25 U.S.C. § 1915(a). ICWA does not define "good cause." [3]

Master Duggan found good cause to deviate from ICWA's preferences. The factual bases upon which Master Duggan made his determination were E.P.D.'s preference for the Hartleys, the bond between Nancy Hartley and F.H., the uncertainty of F.H.'s future if the adoption were not allowed, and the "openness" of the Hartleys' adoption.

### 1. Maternal Preference.

 At a hearing in which the terms and consequences were fully explained to her, E.P.D. signed three documents relinquishing her parental rights on condition that the Hartleys adopt F.H. Four months later, at a hearing in front of Master Duggan, E.P.D. testified that she wanted F.H. to be adopted by the Hartleys.

Noatak argues that under *Holyfield*, parental preference cannot defeat the interests of the tribe. In *Holyfield*, the United States Supreme Court held that parents can not defeat *tribal jurisdiction* by giving birth off a reservation. *Id.* at 53, 109 S.Ct. at 1610. Since jurisdiction is not an issue in this case, *Holyfield* is not apposite.

ICWA states, with regard to the order of the preferences, "[w]here appropriate, the preference of the Indian child or parent shall be considered." 25 U.S.C. § 1915(c). The Bureau of Indian Affairs publication "Guidelines for State Courts; Indian Child Custody Proceedings" (Guidelines) provides that good cause not to follow the order of preference may be based on parental preference. 44 Fed.Reg. 67584, § F.3 (1979). Although the Guidelines do not have binding effect, this court has looked to them for guidance. *In re L.A.M.*, 727 P.2d 1057, 1060 n. 6 (Alaska 1986). ICWA and the Guidelines indicate that courts may consider parental preference when determining whether there is good cause to deviate from ICWA preferences. E.P.D.'s preference for the Hartleys was an appropriate factor for the superior court to consider in its finding of good cause.

Noatak argues that even if a mother's preference constitutes good cause to deviate from ICWA placement preferences, E.P.D.'s relinquishment should be given little weight since it was neither reasonable nor knowledgeable.[4] E.P.D. had offered to relinquish F.H. to several different people,

---

**3.** Noatak's argument that the three ICWA preferential placements must be rejected before consideration of an alternative ignores the "good cause" exception.

**4.** DFYS argues that E.P.D.'s decision to relinquish to the Hartleys should be set aside. A

party generally "may not present new issues or advance new theories to secure a reversal of a lower court decision." *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). Since this issue was first raised on appeal, we will not reach it.

including Mary Penn. At least once she adamantly opposed placement with the Hartleys. She admitted that when she signed the relinquishment to the Hartleys she was so mixed up she would have signed anything. Noatak argues that E.P.D.'s decision was based in part on her belief that F.H. had serious health problems.

However, Master McBurney certified that E.P.D. understood and voluntarily signed the documents. Since signing them, E.P.D. has consistently supported an adoption by the Hartleys. E.P.D. gave several reasons she would not want to return to Noatak or have her daughter raised there. The finding that E.P.D. preferred that the Hartleys adopt F.H. was not clearly erroneous.

### 2. Bond between Nancy Hartley and F.H.

Both guardians ad litem testified to a strong bond between Nancy Hartley and F.H. An early interventionist stated that F.H.'s bond with Nancy Hartley is the best she will ever have. Bonding between Nancy Hartley and F.H. was a proper factor for the superior court to consider. The finding of bonding was not clearly erroneous.

### 3. F.H.'s Need for Permanent Placement.

Master Duggan recognized that F.H.'s situation would be uncertain if the Hartleys' adoption petition were dismissed and E.P.D. withdrew her conditional relinquishment. E.P.D.'s relinquishment was conditional on the Hartleys' adoption of F.H. If the Hartleys' adoption petition were dismissed, F.H. would have continued to be in DFYS' temporary custody. DFYS' petition to terminate permanently E.P.D.'s parental rights had not been granted. No other petition to adopt F.H. had been filed. Although DFYS expressed an intent to place F.H. with Mary Penn immediately, further legal proceedings would have been necessary for a permanent adoption by Mary Penn. The superior court properly considered F.H.'s situation if the adoption petition were dismissed. It was not clearly erroneous for the superior court to find that F.H.'s uncertain situation would have continued if the Hartleys were not allowed to adopt F.H.

### 4. Openness of Hartley Adoption.

Master Duggan and Judge Andrews found that an adoption by the Hartleys would be open, since E.P.D. and her family would have access to F.H. Noatak argues that an adoption by Mary Penn would ensure access to F.H. by E.P.D. and other relatives. E.P.D. testified that she could visit F.H. more easily in Kennewick, Washington than in Noatak. The finding that an adoption by the Hartleys would be open was not clearly erroneous and was a proper factor for the superior court to consider.

### III. CONCLUSION

Given the possibility of a placement with a relative in Noatak, this case presented a close question to the superior court. However, the factual findings which supported deviation from ICWA preferences are not clearly erroneous. Further, they address factors which are proper to consider in determining whether good cause exists to deviate from the preferences. The record as a whole reveals no abuse of discretion. Therefore, the order approving Master Duggan's finding of good cause is AFFIRMED and the decision to grant the Hartleys' Petition for Adoption is AFFIRMED.