OPINION OF THE COURT
Barbara Howe, J.
This is a petition for the adoption of an infant, Baby Boy J. (hereafter, Baby J.), born on December 14, 2010. Baby J. is an Indian child within the meaning of the Indian Child Welfare Act (hereafter, ICWA) (25 USC § 1903 [4]), and his biological mother, Magen M., is an Alaskan Eskimo, a member of the NANA Regional Corporation. Baby J.’s biological father is unknown. The adoptive parents took custody of Baby J. on December 15, 2010.[1]
At the time of Magen M.’s surrender of Baby J., she and the adoptive parents entered into a post-adoption contact agreement (hereafter, PACA). A judicial consent hearing[2] pursuant to the ICWA took place on January 4, 2011, before the Honorable Claudia M. Burton, Judge of the Circuit Court of the County of Marion, Oregon, who approved the surrender.
On July 25, 2011, a petition for the adoption of Baby J. and approval of the PACA was filed in this court. The petition also *200 seeks an order from this court finding “ ‘good cause’ to deviate from the ICWA placement preferences” (25 USC § 1915). This court appointed an attorney for the child to review the proposed PACA. In her report to the court, the attorney for the child had no objection to the proposed PACA, but she has urged that Ha-gen H.’s tribe is entitled to notice of this adoption proceeding pursuant to the ICWA (25 USC § 1912).
The parties have submitted legal memoranda on the notice issue, and I must now decide (1) whether Hagen H.’s tribe is entitled to notice of this adoption proceeding pursuant to the ICWA (25 USC § 1912), and (2) whether good cause exists to dispense with the placement preferences set forth in the ICWA (25 USC § 1915). I have reviewed the adoption file, all the legal memoranda, and all the supporting documentation, and I now find and decide as follows.
(A)
Notice Pursuant to the ICWA
An “Indian child” is defined as “any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe” (25 USC § 1903 [4]). In this instance, Hagen H. is an “Indian,” as defined in 25 USC § 1903 (3) (“any person who is a member of an Indian tribe, or who is an Alaska Native and a member of a Regional Corporation as defined in section 1606 of Title 43”). Therefore, because this is a “child custody proceeding” involving an Indian child (25 USC § 1903 [1] [iv] [an “adoptive placement” proceeding]), the ICWA applies to this adoption.
Hagen H.’s tribe has had no notice of the pending adoption proceeding. The attorney for Baby J. contends that Hagen H.’s tribe should be noticed pursuant to ICWA § 1912:
“In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child’s tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be deter *201 mined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding” (25 USC § 1912 [a] [emphasis added]).
The adopting parents and the adoption agency oppose the notice request on the ground that this adoption is a voluntary adoption, governed by section 1913 of the ICWA (25 USC § 1913), which has no tribal notice requirement. Furthermore, they argue that the privacy rights of Magen M. trump any requirement that notice be provided to the tribe.
I find that this adoption is a voluntary adoption for purposes of determining the applicability of the notice requirements in the ICWA. No New York case directly addresses the issue now before me, namely, whether Magen M.’s Native American tribe is entitled to notice of this voluntary adoption proceeding, in which Magen M. has consented to have her child adopted by a non-Indian family.
The purpose of the ICWA’s procedural requirements, including its notice provisions, has been explained by the Supreme Court of the United States:
“The Indian Child Welfare Act of 1978 (ICWA), 92 Stat. 3069, 25 U.S.C. §§ 1901-1963, was the product of rising concern in the mid-1970’s over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes. Senate oversight hearings in 1974 yielded numerous examples, statistical data, and expert testimony documenting what one witness called ‘[t]he wholesale removal of Indian children from their homes, . . . the most tragic aspect of Indian life today.’ Indian Child Welfare Program, Hearings before the Subcommittee on Indian Affairs of the Senate Committee on Interior and *202 Insular Affairs, 93d Cong., 2d Sess., 3 (statement of William Byler) (hereinafter 1974 Hearings)” (Mississippi Band of Choctaw Indians v Holyfield, 490 US 30, 32 [1989]).
If an Indian child resides or is domiciled within the reservation of his or her tribe, the Indian tribe has exclusive jurisdiction over any child custody proceeding pursuant to the ICWA (25 USC § 1911 [a]). Section 1911 (b) of the statute governs tribal jurisdiction over an adoption proceeding, such as this proceeding, where the child is not domiciled on a reservation or residing on a reservation:
“In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child’s tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child’s tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe” (25 USC § 1911 [b] [emphasis added]).
Here, Magen M. specifically objected to the adoption proceeding being transferred to her tribal court during the consent hearing in Oregon, and she clearly expressed her choice to place her child with a non-Indian family. During that proceeding, she also invoked her right to anonymity and confidentiality, as provided by the ICWA (25 USC § 1915 [c] [“Where appropriate, the preference of the Indian child or parent shall be considered: Provided, That where a consenting parent evidences a desire for anonymity, the court or agency shall give weight to such desire in applying the preferences” (emphasis added)]).
The Appellate Division, First Department, has held that although the ICWA is generally applicable to state adoption proceedings, “it does not expressly authorize tribal intervention in adoption proceedings as a matter of right (25 USC § 1911 [c])” (Matter of Baby Boy C., 27 AD3d 34, 36 [2005]). In Baby Boy C, however, the issue before the Court was whether the tribe should be permitted to intervene, not whether notice to the tribe was required.
The possible applicability of the ICWA’s notice procedures to a voluntary child custody proceeding was debated when the ICWA was enacted, and the issue has been decided by other *203 courts and interpreted by the official guidelines issued by the Bureau of Indian Affairs:
“The sole issue presented in this case is whether under the Indian Child Welfare Act 1 an Indian child’s tribe is entitled to notice of a proceeding for voluntary termination of parental rights. We answer this question in the negative. Congress explicitly granted intervention rights to tribes in involuntary termination proceedings, but did not do so in voluntary termination proceedings. Compare 25 U.S.C.A. § 1912(a) with 25 U.S.C.A. § 1913 (West 1983). [Footnote 1: 25 USC §§ 1901-1963.]
“The legislative history of the Act demonstrates that this was a considered choice by Congress. Witnesses testified on both sides of the question whether notice should be required.2 Additionally, the Bureau of Indian Affairs interpretative guidelines confirm the correctness of our view: ‘The Act mandates a tribal right of notice and intervention in involuntary proceedings but not in voluntary ones.’ Department of the Interior, Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, at 67586 (1979). [Footnote 2: See testimony of (1) Chief Calvin Issac, Mississippi Band of Choctaw Indians, in Indian Child Welfare Act of 1978: Hearings Before The Subcommittee on Indian Affairs and Public Lands of the House Comm, on Interior and Insular Affairs, 95th Cong., 2d Sess. 62-65 (1978); (2) Mary Jane Fales, North American Center on Adoption, Id. at 141-148; and (3) Sister Mary Clare, Catholic Social Services of Alaska, Id. at 80-90.]
“The appellees’ contention that due process requires tribal notice lacks merit. In enacting the Indian Child Welfare Act, Congress has both created and defined tribal rights in adoption and termination proceedings. The provisions of the Act which give tribes the right to notice of certain proceedings and not to others, define the scope of tribal rights. The Act strikes a balance between the sometimes conflicting interests of Indian parents, Indian children, and their tribes. We are unable to say that the fact that Congress stopped short of granting tribes the right to notice in voluntary termination proceedings is fundamentally unfair” (Catholic Social Servs., Inc. *204 v C.A.A., 783 P2d 1159, 1160 [Alaska 1989] [emphasis added]).
Although the guidelines of the Department of the Interior, Bureau of Indian Affairs (hereafter, BIA guidelines) are not regulations and have no legislative effect, the purpose of the guidelines is to provide interpretation of certain provisions of the ICWA and also to “provide procedures which, if followed, will help assure that rights guaranteed by the Act are protected when state courts decide Indian child custody matters. To the extent that the Department’s interpretations of the Act are correct, contrary interpretations by the courts would be violations of the Act” (Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed Reg 67584, 67584 [1979] [emphasis added]). As set forth in Catholic Social Servs., Inc. (at 1160), the guidelines specifically state that “[t]he Act mandates a tribal right of notice and intervention in involuntary proceedings but not in voluntary ones.”
Beyond the foregoing, the purpose of notice to a tribe must be balanced with a birth parent’s right to anonymity and confidentiality as set forth in the ICWA (25 USC § 1915 [c]). The BIA guidelines instruct that this birth parental right to privacy requires that, in a case such as this, where an Indian birth parent voluntarily chooses to place her child with non-Indian parents, that right to privacy cannot be overriden by the courts:
“Under the Act confidentiality] is given a much higher priority in voluntary proceedings than in involuntary ones. The Act mandates a tribal right of notice and intervention in involuntary proceedings but not in voluntary ones. Cf. 25 U.S.C. § 1912 with 25 U.S.C. § 1913. For voluntary placements, however, the Act specifically directs state courts to respect parental requests for confidentiality. 25 U.S.C. § 1915(c). The most common voluntary placement involves a newborn infant. Confidentiality has traditionally been a high priority in such placements. The Act reflects that traditional approach by requiring deference to requests for anonymity in voluntary placements but not in involuntary ones. This guideline specifically provides that anonymity not be compromised in seeking verification of Indian status. If anonymity were compromised at that point, the statutory requirement that requests for anonymity be respected in applying the preferences would be meaningless” (44 Fed Reg at 67586).
*205 Notice to the tribe as urged here by Baby J.’s attorney would, clearly, violate both Magen M.’s right to anonymity and to confidentiality. That fact, coupled with the absence of any notice requirement in the voluntary placement statute (25 USC § 1913), as contrasted with the inclusion of notice requirements for involuntary proceedings (25 USC § 1912), clearly compels the conclusion that the tribe is not entitled to notice of this proceeding.
(B)
Good Cause Determination (25 USC § 1915)
The ICWA sets forth the preferences for placement of an Indian child “in the absence of good cause to the contrary, to a placement with (1) a member of the child’s extended family; (2) other members of the Indian child’s tribe; or (3) other Indian families” (25 USC § 1915 [a]). A “good cause” determination to deviate from the ICWA statutory placement preferences is
“a matter of discretion . . . [to] be exercised in light of many factors . . . including] but . . . not necessarily limited to the best interests of the child . . . the wishes of the biological parents . . . the suitability of persons preferred for placement . . . the child’s ties to the tribe . . . and the child’s ability to make any cultural adjustments necessitated by a particular placement” (Matter of Adoption of M., 66 Wash App 475, 482, 832 P2d 518, 522 [1992]).
When Magen M. appeared on January 4, 2011 in Marion County, Oregon before Judge Burton for the judicial consent hearing, she was represented by counsel. The ICWA procedures (25 USC § 1913) when a birth parent voluntarily relinquishes his or her parental rights involving an Indian child were carefully followed:
“Where any parent or Indian custodian voluntarily consents to a foster care placement or to termination of parental rights, such consent shall not be valid unless executed in writing and recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge’s certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian. The court shall also certify that either the parent or Indian custodian fully understood the explanation in English or *206 that it was interpreted into a language that the parent or Indian custodian understood. Any consent given prior to, or within ten days after, birth of the Indian child shall not be valid” (25 USC § 1913 [a]).
Magen M. executed a document entitled Indian Child Welfare Act Consent to Adoption and Relinquishment of Parental Rights, in open court, and Judge Burton certified on the record that Magen M. understood English and that the terms and consequences of the Indian Child Welfare Act Consent to Adoption and Relinquishment of Parental Rights “were fully explained in detail and were fully understood by the parent” (25 USC § 1913 [a]).[3] Judge Burton confirmed that Magen M. was seeking a finding of “good cause” to deviate from the ICWA placement preferences “so that the [non-Indian] family you’ve selected may adopt your child.” However, Judge Burton’s order, dated January 4, 2011, provides that “this Court defers to the Court having jurisdiction over the adoption any findings regarding good cause under 25 USC § 1915.”
Here, Magen M., an Alaskan Eskimo who is a member of the NANA Regional Corporation, does not live on a reservation. Baby J. has never lived on a reservation or with his birth mother, Magen M., and the adoptive parents took custody of Baby J. the day after his birth. It is Magen M.’s preference that Baby J. be adopted by the petitioners, who are non-Indians. The petitioners have had custody of the child since December of 2010, and the three post-placement home studies submitted to the court show that the child and the adoptive parents have developed a strong bond and that Baby J. is well cared for and is thriving in a loving and nurturing home.
The PACA provides for post-adoption contact with Magen M. Furthermore, it is the expressed desire of the adoptive parents to inform Baby J. about, and educate him in, his Native American heritage, which they believe is paramount to the development of Baby J.’s self-identity.
I find and conclude, therefore, that good cause exists to deviate from the preferences set forth in the ICWA (25 USC § 1915 [a]). (See Matter of Adoption of F.H., 851 P2d 1361 [Alaska 1993].)
Accordingly, I find that the adoption may proceed, without notice to Magen M.’s tribe, and I have scheduled Tuesday, July *207 17, 2012, at 10:30 a.m., for the finalization of this adoption and for court approval of the PACA.

. Magen M. had executed an extrajudicial surrender on December 15, 2010, the day after the child’s birth.

. A copy of the transcript of that proceeding has been submitted to the court with the surrender documents.

. Judge Burton also supervised the execution by Magen M. of a New York State extrajudicial consent.