2013 OK CIV APP 30

### In the Matter of D.L. and K.L., Minor Children.

**Lonnie Porter and Colleen Porter, Petitioners/Appellants,**

v.

**Alvieia Comstock, Dustin Comstock, Choctaw Nation of Oklahoma, State of Oklahoma, ex rel. Department of Human Services, Respondents/Appellees.**

No. 110,278.

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 15, 2013.

Ellen Quinton, McAlester, Oklahoma, for Plaintiffs/Appellants.

Janice K. Skimbo, Wilburton, Oklahoma, for Defendants/Appellees.

BAY MITCHELL, Judge.

¶1 Lonnie and Colleen Porter appeal an order of the district court denying their petition to adopt the minor children, D.L. and K.L., and granting the petition of Alvieia and Dustin Comstock to proceed with adoption of the minor children.

¶2 The minor children in this case are Indian children and the Indian Child Welfare Act (ICWA), 25 U.S.C.A. §§ 1901 to 1963, applies. The children are members or eligible for membership in the Choctaw Nation. The children were taken into DHS custody around July 2009 and have been in foster care with the Porters since shortly after being taken into custody. Around January 2010 the Porters began to consider adopting the children. Parental rights to the children were terminated in April 2011.[1] Respondent/Appellee Alvieia Comstock is the minor children's first cousin, and is therefore entitled to preference as to placement of the children pursuant to ICWA. DHS began to consider the Comstocks as a placement option around October 2010.[2] Petitioner/Appellant Colleen Porter is a member of the Choctaw Nation, and the Porters' home is a tribal foster home in Oklahoma. The Comstocks are not members of any tribe, although Alvieia Comstock believes she has Indian heritage. The Comstocks live in California.

¶3 The Comstocks filed a Motion to Adopt and for Transitioning on August 18, 2011. The Porters filed a Petition for Adoption on September 1, 2011, and sought to stay removal of the children from their home. A trial was held in the matter on December 5 and 6, 2011. On December 9, 2011, the trial court found the Porters failed to meet the burden of demonstrating good cause to deviate from the ICWA placement preferences, and denied the Porters' motion and granted the Comstocks'. The court ordered transitioning of the minor children from the Porters' home to the Comstocks' home as soon as possible, denied the Porters' request for stay of transitioning, and also instructed the Comstocks to notify the court of any problems that arose during the transitioning period. The Porters appeal the trial court's order.

■ ¶4 ICWA allows deviation from the placement preference for extended family when good cause exists to do so. 25 U.S.C.A. § 1915. The "use of the term 'good cause' was designed to provide state courts with flexibility in determining the disposition

1. An appeal of the termination of parental rights to K.L. was dismissed on October 24, 2011, for failure of appellants in that case to file a brief in chief. There does not appear to be a pending appeal of the termination of parental rights to D.L.

2. Apparently, the Comstocks were not previously considered appropriate for foster care placement due to the age of Alvieia Comstock, who turned twenty-one in 2011. The ICWA allows foster care or adoptive placement of a child with an extended family member who has reached the age of eighteen, *see* 25 U.S.C.A. § 1915, whereas in non-Indian child cases DHS allows placement with a person having attained the age of twenty-one. It is unclear why DHS did not consider the Comstocks previously as a placement option pursuant to ICWA.

of a placement proceeding involving an Indian child." Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (1979) (Guidelines). The question of whether there is good cause to deviate from the ICWA preferences is a factual determination to be made by the trial court. We therefore review the court's determination for abuse of discretion. *In re B.B.A.*, 2009 OK CIV APP 80, ¶ 5, 224 P.3d 1285, 1287. "An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." *Harvell v. Goodyear Tire and Rubber Co.*, 2006 OK 24, ¶ 9, 164 P.3d 1028, 1032.

¶ 5 The Oklahoma Indian Child Welfare Act, 10 O.S.2011 § 40.6, provides that the placement preferences of ICWA, 25 U.S.C.A. § 1915, "shall apply to all preadjudicatory placements, as well as preadoptive, adoptive and foster care placements." Section 1915 provides priority for adoptive placement of Indian children with extended family. Extended family "shall be defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." *Id.* § 1903. The placement preferences may be avoided upon a showing that good cause exists to do so. *Id.* § 1915. The party attempting to avoid the placement preferences has the burden of demonstrating by clear and convincing evidence that good cause exists. *In re Adoption of Baby Girl B.*, 2003 OK CIV APP 24, ¶ 58, 67 P.3d 359, 370; *Guidelines*, 44 Fed. Reg. 67,584, 67,594.

¶ 6 Appellees' answer brief included a request for dismissal of the appeal based on Appellants' failure to timely file the designation of the record, which was deferred to the decisional stage of this appeal. Oklahoma Supreme Court Rule 1.28(b)(3) provides that in juvenile appeals, which include adoption proceedings, the designation of the record must be filed within ten days of the filing of the order appealed. The order appealed was filed December 9, 2011. Appellants did not file the designation of the record until January 9, 2012. Appellants brief was also untimely filed. Rule 1.10(c)(3) provides that in juvenile appeals the brief in chief shall be filed within twenty days of receipt of notice of completion of the record. The notice of completion of the record was filed February 9, 2012, and Appellants' brief was filed March 9, 2012. Although Appellants filed two amended designations of the record, the second of which resulted in a second notice of completion of the record filed February 28, 2012, this did not result in an extension of time for Appellants to file the brief in chief. *See* Rule 1.26(c)(5). Pursuant to Supreme Court Rule 1.2 dismissal of an appeal for failure to comply with these rules is discretionary. Although there is no apparent excuse for Appellants' failure to comply with the rules, we decline to dismiss the appeal in this case.

¶ 7 The Porters have two main contentions to support the argument that good cause exists to avoid the placement preferences. First, that due to the children's issues with anxiety and attachment disorders, it will be highly traumatic to move the children from the Porters' home, where they have been since a very early age.[3] It does appear from the record that all parties agree some degree of trauma will result from moving the children out of the Porters' home. However, Dr. Randelman, the children's psychologist, testified that this trauma could be dealt with and overcome if the proper methods are followed, and that there were no indicators the Comstocks would not be capable of dealing with any trauma the children might sustain, or addressing the children's behavioral issues. The testimony at trial demonstrated that both the Porters and the Comstocks appear to be equipped to provide a good, stable home for the minor children. Nothing in the record indicates that the Comstocks would be unable to address the trauma that the children may sustain as a result of leaving the Porters' home. The nature of foster care placement is such that it often results in

---

3. D.L. was around six months old when she was placed in the Porters' care; K.L. was less than one month old.

some degree of trauma to the children involved who are moved from one home to another. The Porters contend that it is against the best interests of the children to move them. However, ICWA is controlling in this case. Although in an ICWA case the child's best interest is a factor, it is not the only factor taken into consideration. *See In re N.L.*, 1988 OK 39, 754 P.2d 863; *In re Adoption of Baby Girl B.*, 2003 OK CIV APP 24, ¶ 68, 67 P.3d 359, 372. ICWA also considers the interests of the Indian family or tribe, and the child's relationship to the family or tribe, with a presumption that the preferences serve those interests. *See In re Adoption of Riffle*, 277 Mont. 388, 922 P.2d 510, 514 (1996). In the Guidelines the commentary to section 1915 of ICWA states: "The Act clearly recognizes the role of the child's extended family in helping to raise children. The extended family should be looked to first when it becomes necessary to remove the child from the custody of his or her parents." 44 Fed. Reg. 67,584, 67,594.

¶ 8 The Guidelines also inform the court of factors to consider when determining whether good cause exists, which include: "(i) The request of the biological parents or the child when the child is of sufficient age; (ii) The extraordinary physical or emotional needs of the child as established by testimony of a qualified expert witness; (iii) The unavailability of suitable families for placement." *Id.* In this case, the first factor is not at issue. As to the third factor, the Comstocks are a suitable family available for placement. As to the second factor, the trial court did consider the trauma that the children would sustain as a result of removing them from the Porters' home due to their specific behavioral/emotional issues, and did not find this sufficient evidence to amount to good cause to avoid the preferences. And, the Indian child welfare worker in the children's case testified on behalf of the Choctaw Nation that placement with the Comstocks was in the children's best interest, even considering

the trauma that may result. We find no abuse of discretion in the trial court's determination of this issue.

¶ 9 The Porters further contend that the purposes of ICWA would be better served by avoiding the placement preferences because the Porters' home is an Indian home and the Comstocks' is not. Although it is true that a purpose of ICWA is preservation of the Indian tribe, the language of the Act demonstrates that the placement preference is for the child's extended family over other members of the child's tribe, with no requirement that the extended family be members of the child's tribe. *See* 25 U.S.C. § 1915. Had Congress intended to include such a requirement it could have done so. *See In re Guardianship of Q.G.M.*, 1991 OK 29, ¶ 7, 808 P.2d 684, 691 (Simms, J., dissenting) ("The Act does not give Indian relatives priority over non-Indian relatives with regard to placement of custody of Indian children."). Additionally, the Comstocks testified that they would make efforts to expose the children to tribal customs and activities, which they believed to be important. We find no abuse of discretion in the trial court's determination that the Porters failed to demonstrate good cause based on this issue.[4]

¶ 10 The testimony at trial demonstrates that both parties are capable of providing the children with a good home. We find no abuse of discretion in the trial court's determination that the Porters did not demonstrate good cause, by clear and convincing evidence, to deviate from the mandatory placement preferences of the ICWA.[5] The order of the trial court is therefore AFFIRMED.

HETHERINGTON, P.J., and GOREE, J., concur.

---

**4.** The Porters further contend that they are entitled to placement preference based on 10A O.S. 2011 § 1-4-812. However, because the minor children are Indian children, 25 U.S.C.A. § 1915 applies in this case, and the Comstocks, rather than the Porters, are entitled to priority pursuant to ICWA.

**5.** We note the trial court included in its order instructions to the Comstocks to communicate to the court any difficulties during the transition of the children from the Porters' home to the Comstocks' home. This Opinion goes no further than to find no error with the trial court's December 9, 2011 order.