******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE DYNASTIE D.[*]
## (SC 21157)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Pursuant to statute ((Rev. to 2023) § 46b-129 (j) (4)), a child in the custody of the Commissioner of Children and Families may be placed "in the home of a . . . relative caregiver . . . within or without the state, provided [the] child shall not be placed outside the state except for good cause . . . ."

The minor child, D, who had been adjudicated neglected and committed to the custody of the petitioner, the Commissioner of Children and Families, appealed, on the granting of certification, from the judgment of the Appellate Court, which had upheld the trial court's decision to grant the petitioner's motion for D's out-of-state placement. After D was committed to the petitioner's custody, she was placed with two individuals residing in Connecticut, who were licensed foster parents and who presented themselves as long-term resources for D's adoption. Although D thrived and bonded with these individuals, the petitioner ultimately developed a permanency plan that would involve the termination of the parental rights of D's biological parents and her adoption by her paternal grandparents, who resided in Florida. In granting the petitioner's motion for D's placement with her paternal grandparents in Florida, the trial court found, inter alia, that such placement was in D's best interests and would allow D to maintain a connection with her paternal family while still having the opportunity to maintain a connection with her biological parents, who had indicated that they eventually planned to relocate to Florida. The trial court subsequently issued an articulation at the request of the petitioner, explaining that there was good cause for the out-of-state placement under § 46b-129 (j) (4) and that the same facts that supported its finding of best interests also supported its finding of good cause. On appeal to this court, D claimed that the Appellate Court improperly construed § 46b-129 (j) (4) by failing to apply a presumption in favor of in-state placement and incorrectly determined that the trial court had properly applied the good cause standard in deciding the petitioner's motion for out-of-state placement. *Held*:

The Appellate Court improperly construed § 46b-129 (j) (4) by failing to apply a presumption in favor of in-state placement.

Although § 46b-129 (j) (4) was silent with respect to its operation, including the allocation of the burden of proof when a court considers a motion for out-of-state placement, the statute creates an implied, rebuttable presumption

---

[*]In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

in favor of in-state placement, such a presumption being consistent with the statute's apparent purpose of protecting family integrity prior to the termination of parental rights.

This court concluded that, to rebut that presumption, the party seeking out-of-state placement for the child bears the burden of proving, by a preponderance of the evidence, good cause for that placement.

Moreover, the showing of good cause under § 46b-129 (j) (4) must be made separately from the showing that must be made with respect to the best interests of the child, insofar as the circumstances or factors that support a finding of good cause will often, but not always, be aligned with the best interests of the child, particularly when a child's out-of-state placement will have a significant impact on the parents' ability to maintain a relationship with the child or to pursue reunification.

Furthermore, a trial court, in determining good cause under § 46b-129 (j) (4), has discretion to consider a variety of factors under the totality of the circumstances, but it must consider the effect the out-of-state placement will have on the parents' reunification efforts.

The Appellate Court incorrectly determined that the trial court had properly applied the good cause standard in granting the petitioner's motion for out-of-state placement, and, accordingly, the Appellate Court's judgment was reversed, and the case was remanded with direction to reverse the trial court's decision on that motion and for further proceedings.

Although the trial court cited § 46b-129 (j) (4) in its decision on the petitioner's motion, it did not reference the good cause standard but, instead, repeatedly applied the best interests standard.

Furthermore, in its articulation, the trial court relied extensively on the same evidence on which it relied in making its best interests determination, and the court failed to define the term "good cause" or acknowledge the presumption embodied in § 46b-129 (j) (4), to mention the parent-child relationship that the good cause requirement is intended to safeguard, or to explain why the child's remaining in Connecticut would not allow her to maintain a connection with her paternal family.

Given the importance of the presumption in favor of in-state placement in protecting family integrity and the legislative policy of keeping children in Connecticut, this court concluded that a remand was necessary so that the trial court could apply the correct standard in deciding the motion for D's out-of-state placement.

Argued April 6—officially released June 17, 2026[**]

[**]June 17, 2026, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the respondents' minor child neglected, brought to the Superior Court in the judicial district of Stamford-Norwalk, Juvenile Matters, and transferred to the judicial district of Fairfield, Juvenile Matters, where the respondents were defaulted for failure to appear; thereafter, the court, *Skyers*, *J.*, rendered judgment adjudicating the minor child neglected and committing the minor child to the custody of the petitioner; subsequently, the court, *Skyers*, *J.*, granted the petitioner's motion for the out-of-state placement of the minor child, and the minor child appealed to the Appellate Court, *Alvord*, *Westbrook* and *Wilson*, *Js.*, which affirmed the trial court's decision, and the minor child, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Joshua Michtom*, for the appellant (minor child).

*Evan O'Roark*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

ALEXANDER, J. This certified appeal requires us to determine how "good cause" is established for an out-of-state placement of a child who has been committed to the custody of the petitioner, the Commissioner of Children and Families, under General Statutes (Rev. to 2023) § 46b-129 (j) (4).[1] The Appellate Court upheld the trial court's finding that there was good cause for the out-of-state placement of the minor child, Dynastie D. (child), in the home of her paternal grandparents in Florida. *In re Dynastie D.*, 233 Conn. App. 662, 671–72,

---

[1] During the pendency of this case, the legislature amended § 46b-129 (j), by redesignating the out-of-state placement provision in subdivision (5) of that subsection. See Public Acts 2024, No. 24-126, § 5. For consistency with the pleadings and other decisions in this case, "[a]ll references to § 46b-129 in this opinion are to the 2023 revision of the statute, which was in effect when the motion for out-of-state placement was filed." *In re Dynastie D.*, 233 Conn. App. 662, 664 n.2, 341 A.3d 331 (2025).

697–98, 341 A.3d 331 (2025). On appeal, the child claims that the Appellate Court **(1)** failed to apply a presumption in favor of in-state placement, and **(2)** incorrectly determined that the trial court had properly applied the good cause standard in deciding the petitioner's motion for out-of-state placement. We agree and reverse the judgment of the Appellate Court.

The record reveals the following relevant facts.[2] Since her birth in February, 2023, the child has been committed to the custody of the petitioner by reason of neglect. The petitioner placed the child with Kisha T. and Dennis T., who are licensed foster parents and reside in Bridgeport (foster parents); Kisha T. is a maternal cousin of the respondent mother, Nacole C.[3] The child "thriv[ed]" and bonded with the foster parents, who presented themselves as long-term resources for her adoption. Although the petitioner had no concern about the child's progress with the foster parents, it developed a permanency plan that would include the termination of parental rights and her adoption by Grace M.-D. and Joao D. (paternal grandparents), who are the mother and stepfather of the respondent father, Sebastian M.[4]

Because the paternal grandparents live in Florida, in April, 2024, the petitioner filed a motion seeking approval of an out-of-state placement pursuant to § 46b-129 (j) (4). The petitioner also obtained an assessment from the Florida Department of Children and Families pursuant to the Interstate Compact on the Placement of Children, General Statutes § 17a-175, approving the paternal grandparents as a licensed placement for the child. The child's attorney objected to the motion, arguing that, since birth, "[t]he child's only residence has been with the . . . foster parents" and that she "recognizes and identifies them as her parents and is bonded not only with

[2]For a more detailed rendition of the facts and procedural history of this case, see *In re Dynastie D.*, supra, 233 Conn. App. 664–72.

[3]Counsel for Nacole C. filed an appearance and has adopted the petitioner's brief in this appeal.

[4]Counsel for Sebastian M. filed an appearance but has not otherwise participated in this appeal.

[them] but also with numerous extended family members.” He further argued that the child is “thriving” in her current placement with the foster parents and that moving her to “reside in . . . Florida with the paternal grandparents is not in [her] best interest” because she “is not bonded with [them], does not have a relationship with [them],” and would suffer “emotional and psychological damage” from a move “to a new environment and . . . new caretakers with whom she has only met in person during [two] supervised visitation sessions . . . .”

After an evidentiary hearing, in October, 2024, the trial court issued an oral decision, granting the petitioner’s motion for out-of-state placement.[5] In its decision, the trial court credited the testimony of Tania Mayen, a social worker employed by the petitioner, that, “early in the process, the case plan was” to place the child in Florida with the paternal grandparents, with the agreement of the respondent parents, who had “acknowledg[ed] that they were unable to care for [the child]” and “indicated that they eventually intended to relocate to Florida to be closer to [the child] and the paternal family.” Although Sebastian M. had identified Grace M.-D. as a potential placement resource for the child, that assessment had to be “deferred until after paternity [was] confirmed” in 2023. The trial court credited Grace M.-D.’s testimony that, as soon as paternity was confirmed, “she contacted [the petitioner] so she could be considered as a resource for long-term placement,” that “[she] works as a registered nurse and lives with her husband, Joao D. and

---

[5] In June, 2024, the child moved, pursuant to § 46b-129 (i) and Practice Book § 34a-21 (a), for an order “that the child and her foster parents participate in a foster parent-child interactional evaluation with a clinical interview performed by a clinical psychologist for purposes of assessing the attachment bond between the foster parents and child.” The child argued that the interactional evaluation (1) was necessary to protect her best interests because her “attorney needs additional information regarding the effect of removing [her] from the foster parents’ care,” and (2) would provide “important” information “in determining the nature and quality of [her] attachment to the foster parents as well as the impact on [her] should the attachment be severed.” The trial court denied the motion for an interactional evaluation.

two sons, ages eleven and fourteen, in St. Augustine, Florida," that "[h]er home was assessed by the [s]tate of Florida and she began the process for approval," that "she would be able to provide for [the child's] needs and [to] give her permanency," and that "she wanted to adopt [the child]."

The trial court further credited Grace M.-D.'s testimony that "her main concern would be to provide a stable home for [the child's] safety and well-being," and that "she's willing to have [the child] get to know Sebastian [M.], but Sebastian [M.] would not be living with them." Additionally, the trial court stated: "Grace [M.-D.] had regular and consistent weekly video calls with [the child] that were facilitated by Sebastian [M.] during his visitation time. [She] and . . . Joao [D.], along with her two sons, her sister-in-law, and Sebastian [M.] visited with [the child] in Connecticut in July, 2023. Her last visit with [the child] was in September, 2024, with Joao [D.], her sons, and other extended family in New York. She clearly loves [the child] and wishes to assume care for her in her home. [She] had planned to take [the child] for a visit in Florida in July, 2024. However, that visit did not take place due to the court procedural process." The trial court also credited Kisha T.'s testimony that "she and her family love [the child] . . . [and] have a clear bond with her" and that "she and [Dennis T.] would be willing to adopt [her]."

Observing that the child "is very fortunate to have two possible placements," the trial court first found by a preponderance of the evidence that "placement with [the] paternal grandparents is in [the child's] best interest[s]. [It] will allow [the child] to maintain a connection with her paternal family while still hav[ing] the opportunity to maintain a connection with her [parents]." The court stated that the "child has offered insufficient evidence" to support a conclusion that placing her with the paternal "grandparents in Florida is inconsistent with her best interests . . . [or] that to do so would be detrimental to her best interest[s]." In making this finding, the trial

court "acknowledg[ed] the care the foster parents had given to [the child]," stating: "The . . . foster parents have a loving bond with [the child], and [it] is clear . . . that they have nurtured and cared for her during the time of her placement. . . . [I]t is this loving and sustaining care that will help [the child] transition more easily to her paternal . . . grandparents in Florida."

The petitioner subsequently filed a motion for articulation, requesting the trial court "to articulate whether it made a finding in accordance with . . . § 46b-129 (j) (4) that there was good cause to place the . . . child outside of the state when [it] granted the petitioner's motion for out-of-state placement." The trial court granted the motion and issued a brief articulation, stating: "The same facts that the court used in its finding of best interests do hereby support the finding of good cause. The court finds there is good cause for placing the child outside . . . Connecticut to be with her paternal grandparents in . . . Florida because it will allow [her] the opportunity to maintain a connection with her [paternal] grandparents and extended paternal family." The petitioner then moved the child to Florida in November, 2024, where she now lives with the paternal grandparents.[6]

The child appealed to the Appellate Court, claiming, inter alia, that the trial court had "failed to follow the statutory requirements of § 46b-129 (j) (4)" in approving the out-of-state placement. *In re Dynastie D.*, supra, 233 Conn. App. 672. The Appellate Court conducted a comprehensive analysis of the statute; see id., 673–76; but determined that remand was not necessary because it was "not setting forth a new [good cause] standard" but, rather, was "providing [permissible] factors for trial

---

[6]The petitioner moved the child to Florida after the trial court denied the child's motion to stay the order granting the motion for out-of-state placement, which the Appellate Court then upheld following a motion for review and denial of reconsideration en banc. See *In re Dynastie D.*, supra, 233 Conn. App. 671 n.8. As was discussed at oral argument before this court, the trial court has not yet rendered judgment terminating the respondents' parental rights, and the respondents have visited but not yet moved to Florida.

courts to consider in [guiding] their good cause determination." Id., 680 n.12; see id., 679–80. The Appellate Court concluded that the trial court had not abused its discretion in its application of the good cause standard under § 46b-129 (j) (4). See id., 682–84. Accordingly, the Appellate Court affirmed the trial court's decision.[7] Id., 698. This certified appeal followed.[8]

On appeal, the child argues that the Appellate Court incorrectly construed § 46b-129 (j) (4) by not giving effect to a presumption in favor of in-state placement and, instead, conducting "a best interests based comparison of two possible placements without any presumption employed."[9] Observing the phrasing of the statute as a

---

[7]The child advanced several other claims in the Appellate Court, including that "the [trial] court impermissibly shifted the burden of proof on the issue of good cause from the petitioner to her"; *In re Dynastie D.*, supra, 233 Conn. App. 685; "the [trial] court's determination of good cause was not supported by the evidence"; id., 689; and expert testimony was required to support the finding of good cause. See id., 696–97. The Appellate Court rejected each of these claims; see id., 689, 696, 697; and they are not before us in this appeal.

[8]We granted the child's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly define the phrase 'good cause' in . . . § 46b-129 (j) (4)?" And (2) "[d]id the Appellate Court correctly conclude that the trial court had correctly determined that there was good cause for the out-of-state placement of the child pursuant to § 46b-129 (j) (4)?" *In re Dynastie D.*, 353 Conn. 905, 342 A.3d 239 (2025).

Having reviewed the record and briefs in this case, we exercise our discretion to reword the first certified question to reflect the issues in this case more accurately. See, e.g., *State* v. *Peluso*, 344 Conn. 404, 413 n.7, 279 A.3d 707 (2022). Accordingly, we reword the first certified question as follows: "Did the Appellate Court correctly construe and apply § 46b-129 (j) (4)?"

[9]The petitioner observes, and the child has not disputed, that the child did not argue before the Appellate Court that § 46b-129 (j) (4) incorporates a rebuttable presumption in favor of in-state placement. Nevertheless, the petitioner concedes that "the statute contains an implicit presumption that favors in-state placement" but argues that the trial court's good cause finding sufficed to rebut that presumption. Given this candid concession by the petitioner, and the fact that the child's presumption arguments relate more broadly to the statutory construction claims raised in the Appellate Court and reflected in the certified question, we will consider this argument. See, e.g., *Dept. of Public Health* v. *Estrada*, 349 Conn. 223, 251–52, 315 A.3d 1081 (2024).

proviso, the child urges us to "look to the overall child welfare statutory scheme and [to] recognize that a statutory mandate to condition a certain outcome on a burden greater than best interests necessarily requires a showing that that outcome better advances the core policy goals of the statutory scheme."

Whether the Appellate Court correctly construed § 46b-129 (j) (4) is a matter of first impression for this court and is "a question of statutory interpretation over which we exercise plenary review. . . . Accordingly, we review [§ 46b-129 (j) (4)] pursuant to General Statutes § 1-2z and our familiar principles of statutory interpretation." (Citation omitted.) *State* v. *Enrrique H.*, 353 Conn. 823, 829, 347 A.3d 1156 (2025).

General Statutes (Rev. to 2023) § 46b-129 (j) (4) provides in relevant part: "The commissioner may place any child or youth so committed to the commissioner in a suitable foster home or in the home of a fictive kin caregiver, relative caregiver, or in a licensed child-caring institution or in the care and custody of any accredited, licensed or approved child-caring agency, within or without the state, *provided a child shall not be placed outside the state except for good cause* and unless the parents or guardian of such child are notified in advance of such placement and given an opportunity to be heard, or in a receiving home maintained and operated by the commissioner. . . ." (Emphasis added.)

The "good cause" requirement of § 46b-129 (j) (4) is phrased as a proviso. See, e.g., *Michel* v. *Hartford*, 226 Conn. App. 98, 126, 317 A.3d 49 (2024). "A proviso is said to remove special cases from the general enactment and [to] provide for them specially. . . . Provisos do not usually expand the scope of a statute, but restrict it." (Citations omitted; internal quotation marks omitted.) *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 189, 592 A.2d 912 (1991).

The limiting nature of a proviso indicates that the "good cause" standard for out-of-state placement under

§ 46b-129 (j) (4) restricts the petitioner's authority to place a child or youth who has been committed to the petitioner's care. The statute is, however, silent with respect to its operation, including who has the burden of proof when the court considers a motion for out-of-state placement. Provisos generally are strictly "construed with doubts resolved in favor of the general rule rather than the exception and . . . those who claim the benefit of an exception under a statute have the burden of proving that they come within the limited class for whose benefit it was established." (Internal quotation marks omitted.) *Michel* v. *Hartford*, supra, 226 Conn. App. 126; see, e.g., *Yale University* v. *New Haven*, 71 Conn. 316, 337, 42 A. 87 (1899). This is not, however, always the case, and the nonbenefiting party may have the burden of pleading and proof, particularly when it has superior access to the relevant facts. See *Michel* v. *Hartford*, supra, 127–30. Because "[s]ilence renders a statute ambiguous when the missing subject reasonably is necessary to effectuate the provision as written, and the missing subject renders the statute susceptible to more than one plausible interpretation," we may consider extratextual evidence in construing the statute under § 1-2z. (Internal quotation marks omitted.) *TOV Realty, LLC* v. *Suarez*, 354 Conn. 745, 758, A.3d (2026); see, e.g., *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 433–34, 274 A.3d 85 (2022).

We agree with the parties that the proviso creates an implied, rebuttable presumption in favor of in-state placement, which is consistent with the statute's apparent purpose of protecting family integrity prior to the termination of parental rights.[10] "A rebuttable presumption

---

[10]What is now § 46b-129 (j) (4) was enacted in 1977. See Public Acts 1977, No. 77-272. Its legislative history is sparse and focuses primarily on how the notification aspects of the provision mitigate the risk of damage to the relationship between biological parents and their children raised when foster parents have moved out of state prior to the termination of parental rights. See 20 S. Proc., Pt. 5, 1977 Sess., p. 2083, remarks of Senator Betty Hudson; Conn. Joint Standing Committee Hearings, Human Services, Pt. 2, 1977 Sess., p. 445, remarks of Deputy Commissioner of Children and Youth Services Jeanette Dille;

is equivalent to prima facie proof of a fact and can be rebutted only by the opposing party's production of sufficient and persuasive contradictory evidence that disproves the fact that is the subject of the presumption. . . . A presumption requires that a particular fact be deemed true until such time as the proponent of the invalidity of the fact has, by the particular quantum of proof required by the case, shown by sufficient contradictory evidence . . . that the presumption has been rebutted." (Internal quotation marks omitted.) *Fish* v. *Fish*, 285 Conn. 24, 46 n.21, 939 A.2d 1040 (2008). Thus, given the presumption that in-state placement is superior, the party seeking the out-of-state placement bears the burden of proving, by a preponderance of the evidence, good cause for that placement. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 144–45, 210 A.3d 1 (2019); *Michel* v. *Hartford*, supra, 226 Conn. App. 126.

The showing of good cause, which the Appellate Court correctly observed stands separate and apart from the best interests of the child considerations that govern under § 46b-129 generally; see *In re Dynastie D.*, supra, 233 Conn. App. 675–76; rebuts the presumption in favor of in-state placement that effectuates the legislature's purpose of preserving family relationships. The showings are "not synonymous" and must be made separately. (Emphasis omitted.) Id., 676.

Moreover, "[i]n the absence of [a] statutory definition, we construe the term 'good cause' in accordance with the commonly approved usage of the language. . . . At the time that § 46b-129 (j) (4) was amended to include a requirement of 'good cause' for out-of-state placements, 'good cause' was defined to mean a '[s]ubstantial reason, one that affords legal excuse' or a '[l]egally sufficient ground or reason.' . . . Thus, the statute prescribes that [to overcome the presumption in favor of in-state placement] the petitioner must demonstrate a '[l]egally sufficient ground or reason' to warrant the out-of-state

Conn. Joint Standing Committee Hearings, supra, p. 447, remarks of Catherine Calikey, New Britain Legal Aid.

placement of the child." (Citations omitted.) Id., 674; see *Warner* v. *Lancia*, 46 Conn. App. 150, 155, 698 A.2d 938 (1997) (explaining showing required for substitution of fiduciary as defendant beyond time prescribed by General Statutes § 52-599 (b) for substitution as of right); see also Black's Law Dictionary (4th Ed. 1968) p. 822.

The legislature, by using the term "good cause" in § 46b-129 (j) (4) without cabining its meaning within a more specific definition, such as "best interests of the child," conferred discretion on the trial court charged with making that finding and afforded the court flexibility to consider a variety of factors under the totality of the circumstances, including the parents' interests in reunification. *In re Dynastie D.*, supra, 233 Conn. App. 675; see *Kelsey* v. *Commissioner of Correction*, supra, 343 Conn. 441–43; *Warner* v. *Lancia*, supra, 46 Conn. App. 155–56. Given the breadth of the trial court's discretion, like a child custody or visitation determination, "whether to place a child outside the state is a fact-intensive inquiry for the trial court, which has the parties before it and is in the best position to analyze all of the factors [that] go into the ultimate conclusion that [there is good cause to support the out-of-state placement]." (Internal quotation marks omitted.) *In re Dynastie D.*, supra, 674; see *In re Ava W.*, 336 Conn. 545, 589, 248 A.3d 675 (2020). This "require[s] credibility determinations and a weighing of the evidence . . . ." *In re Dynastie D.*, supra, 679.

Although circumstances or factors that constitute sufficient good cause to rebut the presumption in favor of an in-state placement will often also be in the best interests of the child, that is not always the case. As previously noted, the good cause requirement serves to protect family unity and the interest of parents in reunifying with their children. See footnote 10 of this opinion. Parents' interest in reunification is rooted in their "interest . . . in the care, custody, and control of their children . . . [which] is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *Troxel* v. *Granville*, 530 U.S.

57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Consequently, when a child is deemed neglected and is placed in the petitioner's custody, the petitioner is required, with limited exceptions, to make reasonable efforts to reunify the child with his or her parents; see General Statutes § 17a-111b; and, if the petitioner later seeks termination of parental rights for failure to rehabilitate, she must—subject to limited exceptions—prove by clear and convincing evidence that such reunification efforts were made. See General Statutes § 17a-112 (j).

A trial court, therefore, must consider the effect the out-of-state placement will have on the parents' reunification efforts when applying the good cause standard under § 46b-129 (j) (4). Even if an out-of-state placement appears to be in the child's immediate best interests because it is at the time superior to an in-state placement alternative, the child's best interests may not amount to good cause for such a placement if the benefit to the child is minimal compared to the detrimental impact on the parents' reunification efforts. Focusing solely on the child's best interests, without accounting for the parents' reunification interests, risks predetermining termination of parental rights by making reunification impossible due to the geographic separation. That is a result the statute was intended to prevent.

"[I]t is impossible to provide a comprehensive list of circumstances that could satisfy the good cause standard . . . ." *In re Dynastie D.*, supra, 233 Conn. App. 679. Nevertheless, the Appellate Court aptly articulated factors to guide "[t]he discretion of the trial court . . . within the context of the applicable statutory provision." Id., 675. A "trial court properly may elect to consider a number of factors in determining whether a petitioner has met its evidentiary burden of establishing good cause to place the child outside the state. As examples, which are neither exclusive nor all-inclusive, a trial court may wish to consider the suitability of the proposed out-of-state placement; the quality of the child's relationships with individuals in Connecticut or geographically close to

Connecticut and in the vicinity of the proposed out-of-state placement; the child's or the parents' preferences where appropriate; the strength of the emotional bond between the child and the current in-state placement; the opportunity for the child to form a bond with the proposed placement; and the impact the out-of-state placement may have on the child. Trial courts should, of course, evaluate these considerations *independently* from their best interest[s] of the child determination."[11] (Emphasis in original.) Id., 679–80. This is particularly true when the decision to place the child out of state will have a significant impact on the parents' ability to maintain a relationship with the child or to pursue reunification.

We now consider whether the Appellate Court correctly concluded that the trial court had applied the correct legal standard in exercising its discretion. We conclude that it did not and that a remand is, therefore, required.

It is well settled that "this court has never required the talismanic recital of specific words or phrases if a review of the entire record supports the conclusion that the trial court properly applied the law." *State* v. *Henderson*, 312 Conn. 585, 597, 94 A.3d 614 (2014). A trial court's decision is read as a whole to determine whether it applied the correct standard, and we do not cherry-pick portions in isolation to contradict the judgment. See, e.g., *In re*

---

[11]In addition to the Superior Court cases cited as illustrative by the Appellate Court; see *In re Dynastie D.*, supra, 233 Conn. App. 676–78; we find instructive case law arising under the federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1915 (a) (2024). ICWA cases are illustrative because those proceedings are not governed by the best interests of the child standard and are focused squarely on whether good cause exists to depart from the statutory placement preference, which operates as a presumption to effectuate the congressional intent of mitigating cultural bias and keeping tribes intact. See, e.g., *In re Adoption of T.R.M.*, 525 N.E.2d 298, 311–12, 313 (Ind. 1988), cert. denied sub nom. *J.Q. v. D.R.L.*, 490 U.S. 1069, 109 S. Ct. 2072, 104 L. Ed. 2d 636 (1989); *In re Adoption of B.G.J.*, 281 Kan. 552, 565–66, 133 P.3d 1 (2006); *In re C.H.*, 299 Mont. 62, 66–68, 76, 997 P.2d 776 (2000); *People ex rel. South Dakota Dept. of Social Services*, 795 N.W.2d 39, 42–44 (S.D. 2011).

*Annessa J.*, 343 Conn. 642, 676, 284 A.3d 562 (2022). A trial court's citation of the correct legal authorities and reference to at least one of the governing factors support a reading that the correct legal standard was applied. See, e.g., id., 675–76; *In re M. S.*, 226 Conn. App. 857, 869–70, 319 A.3d 833, cert. denied, 349 Conn. 920, 320 A.3d 978 (2024).

Upon review of the record, we cannot be confident that the trial court applied the correct legal standard to adjudicate the petitioner's motion for out-of-state placement. Although the trial court cited the governing statute at the beginning of its oral decision, it never made any reference to the "good cause" standard at any point. Instead, the court repeatedly applied the "best interests" standard in explaining its placement decision. The court's reasoning was grounded in allowing the child "to maintain a connection with her paternal family while still hav[ing] the opportunity to maintain a connection with her [parents]." It emphasized that there was no evidence to suggest that placement with her paternal "grandparents in Florida is inconsistent with her best interests."[12]

The trial court's subsequent articulation does little to suggest that the court conducted the correct inquiry. It

[12]The trial court's decision included language suggesting that the burden of proof was on the child rather than on the petitioner, stating that the child has offered insufficient evidence to support a conclusion that placing her with the paternal "grandparents in Florida [was] inconsistent with her best interests . . . [or a conclusion] that to do so would be detrimental to her best interest[s]." As was discussed at oral argument before this court, the Appellate Court rejected the child's claim that the trial court had improperly shifted the burden of proof, holding that, "despite the [trial] court's isolated use of the imprecise language that forms the basis for the child's claim, [that] court properly placed the burden of proof on the petitioner. The challenged language merely reflects [that] court's assessment of the evidence offered by the child to the court as part of its determination of whether the petitioner had met its burden with respect to good cause." *In re Dynastie D.*, supra, 233 Conn. App. 688. Although this burden shifting issue is not before us as an independent claim of error in this certified appeal, we have taken into account this imprecise language as part of our overall consideration of whether the trial court had applied the correct legal standard.

merely stated: "The same facts that the court used in its finding of best interests do hereby support the finding of good cause. The court finds there is good cause for placing the child outside . . . Connecticut to be with her paternal grandparents in . . . Florida because it will allow [the child] the opportunity to maintain a connection with her grandparents and extended paternal family." This explanation did not define the term "good cause" or expressly or implicitly acknowledge the presumption embodied in § 46b-129 (j) (4) in favor of in-state placement that is more stringent than the generally applicable best interests of the child determination. The articulation also did not explain why remaining in Connecticut would not support those paternal family connections, particularly given the trial court's complimentary treatment in its decision of the foster parents' commitment to the child's well-being and presumed ability to support the transition of the child to Florida. See *In re D.L.*, 298 P.3d 1203, 1205–1206 (Okla. Civ. App. 2013) (tribe did not show good cause under Indian Child Welfare Act of 1978, 25 U.S.C. § 1915 (a), to avoid statutory preference for placement of children with relatives by clear and convincing evidence given finding that trauma from move of children from tribal placement to relatives could be addressed). In addition, the articulation failed to mention the parent-child relationship that the good cause requirement is intended to safeguard.

These factors render this case distinguishable from *In re Annessa J.*, supra, 343 Conn. 642, and *In re Jason R.*, 306 Conn. 438, 51 A.3d 334 (2012), on which the petitioner relies heavily for her argument that remand is not required. Our decision in *In re Annessa J.* considered whether the trial court had applied the more stringent "necessary or appropriate" standard for posttermination visitation, which we explained in *In re Ava W.*, supra, 336 Conn. 588–90, is distinct from the best interests of the child determination utilized in the dispositional phase of a termination of parental rights proceeding. See *In re Annessa J.*, supra, 673–75. We concluded that the trial court applied the correct standard because, in

its the memorandum of decision, read as a whole, the court recited that standard and also "explicitly considered at least one of the factors we enumerated in *In re Ava W.* that a trial court may consider when determining whether posttermination visitation is 'necessary or appropriate' for the child's well-being," namely, the quality of the child's relationship with her father as shown during visitation. Id., 675.

Similarly, in *In re Jason R.*, this court held that the trial court did not improperly shift the burden of proving personal rehabilitation to the respondent. *In re Jason R.*, supra, 306 Conn. 455. The court emphasized that the trial court's memorandum of decision expressly stated in its introduction and conclusion that the petitioner bore the burden of proving failure to rehabilitate by clear and convincing evidence; id., 454; contained a detailed discussion of evidence introduced by the petitioner with respect to the respondent's conduct; id.; and "only commented on the respondent's failure to demonstrate that she [had] achieved personal rehabilitation after concluding that the petitioner had proven its case by clear and convincing evidence." Id., 455. The court also concluded in *In re Jason R.* that two separate articulations provided more detail and "clarif[ied] any ambiguity in the trial court's original memorandum of decision and establish[ed] that the trial court did not improperly shift the burden of proof to the respondent." Id., 457. The articulation in the present case does not have the specificity of the decision in *In re Annessa J.* or the decision and articulations in *In re Jason R.*, particularly given the trial court's extensive reliance on the same evidence used in its best interests determination and its failure to include the parent-child relationship among the factors.[13]

Rather, the present case is consistent with *In re Ava W.*, in which we held that remand was necessary because,

[13]We disagree with the petitioner's reliance on the Appellate Court's decisions in *In re M. S.*, supra, 226 Conn. App. 857, and *In re Fayth C.*, 220 Conn. App. 315, 297 A.3d 601, cert. denied, 347 Conn. 907, 298 A.3d 275 (2023), to illustrate the proposition that, "[b]y citing to the correct law and explicitly making the correct finding, the trial court

in addition to the trial court's incorrectly concluding that it lacked authority to grant posttermination visitation; *In re Ava W.*, supra, 336 Conn. 585–86, 588; "we . . . [set] forth, for the first time, the standard and potential considerations for trial courts to consider when evaluating whether posttermination visitation should be ordered within the context of a termination proceeding." Id., 588; see id., 589–90. As in this case, we emphasized in *In re Ava W.* that "[t]rial courts should . . . evaluate [posttermination visitation] considerations independently from the termination of parental rights considerations"; id., 590; guided by the best interests of the child. See id., 589.

Given the importance of the presumption in favor of in-state placement in protecting family unity and the legislative policy of keeping children in Connecticut, we conclude that a remand is required for application of the correct standard. We acknowledge that, as a practical matter, the same evidence may well support both the best interests and good cause determinations in a particular case.[14] We agree with the Appellate Court that, for purposes of those findings, the separate and

showed that it applied the correct legal standard." Those cases are distinguishable because they furnish a significantly stronger basis to conclude that the trial court had considered the correct standard. See *In re M. S.*, supra, 865–68 (court's failure to recite immediate physical danger standard in its oral decision sustaining the order of temporary custody did not require reversal because court made unchallenged findings concerning respondent's substance abuse and disappearances from home, and stated proper legal standard in opening hearing and making evidentiary rulings); *In re Fayth C.*, supra, 322, 324–26 (court did not improperly require proof that respondent would be able to care for child full-time without aid in considering personal rehabilitation, when its analysis stated proper legal standard in considering evidence showing that he "had failed to achieve the degree of personal rehabilitation that would encourage the belief that, within a reasonable time, considering the age and needs of the child, he could assume a responsible position in [the child's] life").

[14]The respondent parents have stated a preference for the Florida placement and their intention not to oppose the petitions to terminate their parental rights, which means that there may not be any conflict between the best interests of the child and the parents' interests in reunification. Nevertheless, as we previously noted, the respondent parents have yet to move to Florida and their parental rights have yet

"legally distinct" best interests and good cause standards render it "the better practice . . . for the trial court to make specific and independent findings related to [the child's] best interest[s] and good cause, respectively."[15] *In re Dynastie D.*, supra, 233 Conn. App. 684.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's decision to grant the petitioner's motion for the out-of-state placement of the child and to remand the case to the trial court for further proceedings according to law.

In this opinion the other justices concurred.

---

to be terminated. See footnote 6 of this opinion. As a result, they still could oppose termination and seek reunification in Connecticut.

[15]As the child concedes in her appellate brief, given her "age and the passage of time since she was placed with [the paternal grandparents] in Florida," the trial court will need to conduct fact-finding based on the child's current status in her placement there. Given the effects of the passage of time, we do not understand the child to be advocating for her return to Connecticut prior to a new hearing that would result in the required findings as to good cause.